-------------------------------------------------------------X

IN RE:

                                                           **CHAPTER 13**

**Charmaine Brown**
                    **DEBTOR**                              **CASE NO. 18-23036-SHL**
                                                             **SUPPLEMENTAL BRIEF**

------------------------------------------------------------X

## DEBTOR'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION OBJECTING TO PROOF OF CLAIM 5-1 BY VALUE-ADD MORTGAGE FUND, LLC AND IN OBJECTION TO UNTIMELY PROOF OF CLAIM 8-1 FILED BY NANCY N. POSNER RETIREMENT TRUST IN ATTEMPT TO AMEND PROOF OF CLAIM 5-1

**NOW COMES** Debtor, Charmaine Brown ("Debtor"), by and through her litigation attorney of record, Linda M. Tirelli Esq., and respectfully offers this supplemental brief in further support of her Motion Objecting to Proof of Claim 5-1 by "Value-Add Mortgage Fund, LLC" and in objection to Proof of Claim 8-1 by Respondent, Nancy N. Poser Retirement Trust ("Respondent") which was filed in attempt to amend Proof of Claim 5-1, post-objection and post-hearing on Motion Objecting to Claim 5-1.

## STATEMENT OF FACTS

Introduction and Procedural History

       Debtor commenced this matter by filing a petition for relief under Chapter 13 ("Chapter 13 bankruptcy case") in the United States Bankruptcy Court for the Southern District of New York, which was assigned Case No. 18-23036 and placed on this Court's docket. The Chapter 13 Plan was filed with the Court and served on all creditors on July 3, 2018. The § 341(a) meeting of creditors was held in White Plains, New York on August 24, 2018. The bar deadline for filing claims was September 24, 2018. At all times relevant hereto, Debtor is the owner of real property located at 137 $^{1/2}$ Morningside Place, Yonkers, New York 10703 ("The Property"). On September 10, 2018, Value-Add Mortgage Fund, LLC ("Value-Add Mortgage") filed Claim No. 5-1 in the amount of $229,447.31, alleging that it is the current creditor entitled to enforce the Note and

Mortgage loan documents to recover on Debtor's alleged defaulted mortgage on The Property. On April 23, 2019 The Debtor filed a Motion Objecting to the Proof of Claim 5-1 and to void the lien per 11 U.S.C. 506 (see Dkt No 26) and said motion was noticed for hearing on July 24, 2019 and served on an officer of Value-Add Mortgage. The hearing was held on July 24, 2019 and Value-Add Mortgage failed to appear. The Court granted Debtor;s motion on record and directed the Debtor to wait to hear from Chambers before submitting an order. Because the Debtor did not hear from Chambers, the Debtor filed a status report on October 24, 2019 memorializing the July 24, 2019 hearing ( see Dkt No 37). The next adjourned conference and hearings for the case were held on or about November 5, 2019, again Vakue-Add Mortgage did not appear. The Court directed the undersigned to submit an Orer to Show Cause to chambers to be served n Value-Add Mortgage for yet another chance to show up and oppose the Debtor's Motion Objecting to Proof of Claim 5-1.

On December 6, 2019 the Court did enter an Order to Show Cause mandating an officer from Value-Add Mortgage to appear at a hearing on February 26, 2020 or risk the Court granting the Debtor the relief sought in Debtor's motion. (see ECF Dkt No 40) Said Order was served on an officer of Value-Add Mortgage on December 9, 2019. The hearng was held on February 26, 2020 and again, Value-Add Mortgage failed to appear or otherwise object to the Debtor's Motion Objecting to Proof of Claim 5-1. Thereafter the Court issued an order for future case proceedings ( ECF Dkt No 45) affirming the Order to Show Cause hearing was held on February 26, 2020, Value Add Mortgage failed to appear or object and that the Court would review the Debtor's Objection to eh Proof of Claim and issue an order. Th next calendared hearing was scheduled for April 22, 2020 bit was adjourned due to the Covid Pandemic. The Debtor avers the pandemic had nothing to do with the case history to this point. The motion was on the docket for nearly 1-year,

multiple opportunities for filing opposition papers were presented and multiple hearings attended by the Debtor through counsel went ignored and not attended by the claimant. The Court issued an rder to show cause which was served on the claimant. The claimant ignored the Court's orders and sat on is rights.

On June 22, 2020, 638-days after the bar for filing claims, the Nancy N. Poser Retirement Trust ("Respondent") filed Claim No. 8-1 in the amount of $226,823.81, alleging that it had acquired the claim previously filed by Value-Add Mortgage, and is now the current creditor entitled to recover on Debtors defaulted mortgage on The Property.

On July 20, 2020 Respondent through counsel Richard Share filed an opposition misleading to the court alleging that Value-Add had appeared before the court and filed opposition, when in fact it had not.[1] Imrtantly the court should note that attached to the opposition, Mr. Share attached what he claimed to be the note his client possessed and states that he personally inspected the same and provided a copy. The Note attached to Mr. Share's opposition, include an image of the Debtor's Note, the separate signed document "Prepayment Rider" and only 1 purported Allonge from Value Add Mortgage to his client the Respondent Nancy N. Poser Retirement Trust. A copy of this version of the Note and allonge is viewable at ECF Dkt No 54 on the Court's ECF System.

---

[1] Debtor filed an unrelated Objection to Proof of Claim 2-1 (see Dkt No. 25) which was met with opposition initially mistakenly linked to Debtor's objection to Proof of claim 5-1 (see Dkt No 28). This mistake was corrected via refiling the opposition pertsining to Proof of Claim 2-1 objection (see Dkt. No. 30).

On August 5, 2020, the Court held a telephonic hearing attended by counsel for the Debtor and counsel for the Respondent (newly alleged transferee) and directed the parties to meet and confer and inspect the documents in possession of the Respondent and file responsive papers with a status report due by October 14, 2020.(see Order entered as ECF Dkt No 58)   Respective counsel met to inspect the documents in Respondent's possession on August 21, 2020.  Attached as **Exhibit A** is the Affidavit of Attorney Victoria Reilly Lehning describing the details of the pertinent pages inspected.  The Debtor avers the order of so-called allonges were once again changed from those in Proof of Claim 8-1 and the affirmation of Attorney Share included with Proof of Claim 8-1 and the document attached to Attorney Share's opposition papers submitted as ECF Dkt No 54.  The allonges revolve and are added and subtracted with no rhyme or reason but do make it clear that the same are not firmly affixed to the Note, and the documents offered with Proofs of Claim are inconsistent with other filings and the actual file in respondent's possession. .  The Note inspected is not indorsed and the allonges observed are not proper allonges for the reasons set forth below. For the reasons set forth below, this Court should find that the Respondent is not the holder of a note indorsed t it, lacks a clear unbroken chain of title to the Debtor's Note and does not have the right to enforce the Note. In the alternative, and to the extent necessary, the Court should immediately hold an evidentiary hearing on the matter.

The Property

Debtor is currently the owner of The Property. In order to purchase The Property, Debtor borrowed money from Accredited Home Lenders, Inc., a California Corporation ("Accredited"). On September 16, 2005, Accredited executed a New York Balloon Note ("the Note") with Debtor in the amount of $110,000.00.  Accredited further executed a mortgage naming MERS as its nominee and mortgagee of record for recording purposes only.  Said mrtgage is a security

instrument creating a lien on The Property to secure the Note, which was filed with the Westchester County Clerk. Both the Note and the mortgage lists Debtor as the "Borrower" and Accredited as the "Lender." Specifically, the Note states that the Borrower shall repay the $110,000 to the Lender. Similarly, the mortgage contains a covenant that the Borrower "shall promptly pay the Lender when due principal and interest under the Note," and should the Borrower fail then the Lender may demand full payment or, alternatively, take property rights in The Property from the Borrower. To this day, the only parties that are given rights to enforce the mortgage and the Note are Debtor and Accredited. No other markings appear on the front, nor the backside, of any page on the mortgage or the Note to indicate otherwise. The Note has been presented to the court multiple times and presented to Debtor's Counsel for inspection. The Note at all times relevant is simply not indorsed and as set forth and briefed below, mere possession of the note is not enough under New York State law to enforce the Note.

Claim No. 5-1

On September 10, 2018, Value-Add Mortgage filed Claim No. 5-1 in the amount of $229,447.31. Filed with Claim No. 5-1 is an image Note between Debtor and Accredited, which is separated by a separate signed document, "Repayment Charge Rider to Note," followed by TWO (2) purported "Allonge[s] to the Note" and THREE (3) "Corporate Assignments of Mortgage" filed with the Westchester County Clerk. The purported allonges do not qualify as allonges under New York State Law and do not effectively transfer the rights under the Note and the mortgage to Value-Add Mortgage.

The allonges to the Note were discussed in Debtor's original Objection to Proof of Claim 5-1 and are again described here as follows: first, a purported indorsed-in-blank allonge to the

Note signed by Savitrie Brown, the Assistant Secretary of Accredited. The second, an allonge to the Note signed by Tara Newton, the Assistant Vice President of Trinity Financial Services, LLC, purportedly transfers the Note from Trinity Financial Services, LLC to Value-Add Mortgage. Neither allonge is dated. Neither allonge is physically attached directly to the Note. The Note is not indorsed by way o the series of allonged presented in Proof of Claim 5-1

The assignments resented with Proof of Claim 5-1  are just as problematic as the unendorsed Note  in that the series presents the following chain of assignments of the *mortgage only* without the Note.  The assignments are as follows: an assignment from Mortgage Electronic Registration Systems, Inc. ("MERS"), purportedly as nominee for Accredited and its successors and assigns, assigned the *mortgage only* to assignee SRG Inc. and Strategic Recovery Group, Inc. (also known as Clearspring Loan Services, Inc.) (Control # 562073185); an assignment from SRG Inc. and Clearspring Loan Services, Inc. assigning the *mortgage only* to Trinity Financial Services, LLC (Control # 562073186); and an assignment from Trinity Financial Services, LLC assigning the *mortgage only* to Value-Add Mortgage Fund, LLC (Control # 562073187).[2]

Transfer of Claim No. 5-1

On June 19, 2020, Richard Share, an attorney claiming to be based in California, representing the  Respondent, filed a "Transfer of Claim Other Than for Security," attempting to transfer Claim No. 5-1 from Value-Add Mortgage to Respondent. Along with the transfer of claim, Respondent – through its own counsel - submitted a series of documents that have *nothing* to do with Debtor or this Chapter 13 bankruptcy case. (see ECF Dkt No 50)

---

[2]     Notably, all three corporate assignments of mortgage were filed on July 25, 2016 at 1:50 PM by Richmond Monroe Group, Inc. Richmond Monroe Group Inc is a document production company which advertises its serviced to include creating assignments and curing collateral file defects. https://www.richmondmonroe.com/Services  The Debtor avers the three assignments are all bogus documents manufactured from whole cloth by the Richmond Monroe company which had nothing to do with any actual transfers of mortgages.

First, Respondent submitted an "Allonge to the Note," transferring the right to payment under a note to Respondent. This allonge lists "Ileana Marroquin Cruz" as the borrower to a Note dated September 13, 2006 for the amount of $87,070, with the property address as 709 Saint Lukes Place, Baldwin, New York, 11510. To date, Debtor has absolutely no affiliation with Ms. Cruz, the property located on Saint Lukes Place, or the Note that is purportedly being transferred to Respondent.

Next, Respondent submitted a corporate assignment of mortgage, transferring the rights under a mortgage to Respondent. This assignment lists "Main Street Asset Solutions, Inc." as the assignor assigning a mortgage to Respondent. The original mortgage under this assignment was executed on March 3, 2006, by "Charlie C. Brown, Jr., A Married Man," in the amount of $15,800, in regards to a property located at 4517 Oxford Road, Roxboro, North Carolina 27674. Again, Debtor has absolutely no affiliation with Mr. Brown Jr., the property located on Oxford Road, or the mortgage that is purportedly being assigned to Respondent.

Following the allonge and the corporate assignment of mortgage, Respondent attached an image of the Note executed between Debtor and Accredited. The Debtor avers this Transfer of Claim is baseless and simply makes no sense whatsoever raising more questions than answers. Despite passage of time there has been no attempt by Attorney Share, the Respondent or add-Value Mortgage to withdraw, amend, explain, supplement or otherwise preemptively advise the court that clearly there are material defects with ECF Dkt No 50.   The Debtor objects to the Transfer of Claim filed as ECF Dkt No 50.


Proof of Claim No. 8-1

On June 22, 2020, just three days after filing the transfer of Claim No. 5-1, Respondent through its counsel in California, Attorney Richard Share, filed Proof of Claim No. 8-1 in the amount of $226,823.81. Filed with Claim No. 8-1 is an image of the original Note between Debtor and Accredited, a separate signed agreement "Repayment Charge Rider to Note," followed by two "Allonge[s] to the Note" and four corporate assignments of mortgage filed with the Westchester County Clerk, purporting to transfer the rights under the mortgage to Respondent.

The allonges to the Note are filed in Poof of Claim 8-1 in order as follows: first, an allonge to the Note signed by Karissa Jones, Managing Member of Value-Add Mortgage, purportedly transfers the Note from Value-Add Mortgage to Respondent. The second, an allonge to the Note signed by Tara Newton, the Assistant Vice President of Trinity Financial Services, LLC, purportedly transfers the Note from Trinity Financial Services, LLC to Value-Add Mortgage. This second allonge also appears with Claim No. 5-1 submitted by Value-Add Mortgage. *The indorsed-in-blank allonge that was submitted to the Court by Value-Add Mortgage in Claim No. 5-1 was not included by Respondent in Claim No. 8-1.* The first allonge presented as an exhibit with Proof of Claim 8-1 makes no sense. The story told has the Note being indorsed backward and nothing from the originating lender. The Note presented in Proof of Claim 8-1 is not indorsed. Neither of the TWO (2) allonges presented with Proof of Claim 8-1 is affixed to the Note and therefore is not an indorsement nor an allonge by definition as discussed herein below. There is a separate signed agreement placed between te Note and the first purported allonge presented in Proof of Claim 8-1.

The assignments presented with Proof of Claim 8-1 are as follows: the same three assignments submitted by Value-Add Mortgage in Claim No. 5-1, and an assignment *of mortgage*

*only* from Value-Add Mortgage Fund, LLC to Nancy N. Poser Retirement Trust (Control # 601508550).

<u>Debtor's Objection to Claim No. 8-1 and 5-1</u>

Debtor is now objecting to Claim No. 8-1 filed by Respondent as an amended proof of claim 5-1. Simply put, nothing in Claim No. 8-1 indicates that Respondent has any rights under the Note between Debtor and Accredited relating to The Property so as to be able to enforce the Note before this Court, and Respondent's assertion that it can enforce the Note by having mere possession of the Note, or, alternatively, through a series of purported allonges to the Note or assignments of mortgage inly is completely unfounded.

## ARGUMENT

Under New York Law, [3] a plaintiff has standing to enforce both a mortgage and the accompanying promissory note "where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." <u>In re Lippold</u>, 457 B.R. 293, 296 (Bankr. S.D.N.Y. 2011). To establish standing as a "holder" of a note so as to be able to enforce it in this Chapter 13 bankruptcy case, Respondent can provide the Court with "proof of a written assignment of the Note, or by demonstrating [it] has physical possession of the Note endorsed over to it." <u>In re Escobar</u>, 457 B.R. 229, 240 (Bankr. E.D.N.Y. 2011). Proper endorsement of a note can be accomplished through an allonge **firmly affixed to the note**. <u>See</u> <u>In re Sterling</u>, 2018 WL 313085, *4 (Bankr. S.D.N.Y. Jan. 5, 2018) emphasis added. It follows that, if the Note Respondent is seeking to enforce by filing Claim No. 8-1 is neither originally assigned

---

[3]     The Note is labelled a "New York Balloon Note" and paragraph 16 of the mortgage specifies that "the state and local law that applies in the place that the Property is located will govern this mortgage," which is New York, indicating New York law applies.

to it, nor endorsed over to it by allonge, then Respondent cannot enforce the Note in this Chapter 13 bankruptcy case. Unfortunately for Respondent, it has neither.

First, counsel for Respondent, Richard Share, unconventionally attached his own declaration to Proof of Claim 8-1 argued in Claim No. 8-1 filing that in order for Respondent to enforce the Note, "all that is necessary is that [Respondent] have possession of the original Note." <u>See</u> Declaration of Richard Share. This assertion is legally baseless and contrary to New York law— the long-standing history of case law in New York on this issue makes it clear that mere possession of a note is not sufficient to provide the person in physical possession of the note with the ability to enforce it. Because mere possession is not enough, the Court should look to whether Respondent holds a complete chain of written assignments of the Note, or, in the alternative, the Note is specifically endorsed in blank or specifically endorsed to Respondent, Upon inspecting indorsements oof the Note, the Court needs to examine whether there is a proper allonge affixed to the Note transferring the rights under the Note to Respondent. Although Respondent filed what appears to be an attempt at a series of allonges indorsing the Note with Claim No. 8-1, the  allonges are improper and should not stand because they are not a complete chain of indorsements and are not properly affixed directly to the Note. The purported allonges in fact contain a different loan number from the Note. The third and final way in which Respondent can enforce the Note is by proving to the Court that it has both physical possession of the Note and can establish a clear chain of ownership tracing the Note back to its last assignor. Respondent cannot do so, however, because the Note and series of allonges included with Claim No. 8-1 does not contain sufficient endorsements or allonges to successfully trace the Note from Respondent to its original holder.

For the following reasons, Debtor respectfully requests that the Court dismiss Claim No. 8-1 and the claim it seeks to amend , Proof of Claim 5-1, because Respondent does not have the

authority to enforce the Note, or, in the alternative, the Court should grant an evidentiary hearing on the matter as the issue of the indorsements of Note by Respondent is a question of fact.

**Respondent's mere possession of the Note alone does not allow Respondent to enforce the Note in this Chapter 13 bankruptcy case.**

"Mere possession does not give a party the right to enforce a note and mortgage under New York law." In re Pinnock, 594 B.R. 609, 613 (Bankr. S.D.N.Y. 2018); see also CIT Bank, N.A. v. Ji Youn Min, 2016 U.S. Dist. LEXIS 102694, at *10 (S.D.N.Y. Aud. 3, 2016) ("physical delivery of the note *must* be accompanied by a dated allonge or indorsement in blank on the face of the note"); Caraballo v. Homecomings Fin., 2014 U.S. Dist. LEXIS 69942, at *15 (S.D.N.Y. May 21, 2014) ("[P]hysical possession of the Note is sufficient to transfer mortgage rights under only limited circumstances: where there is an allonge or indorsement in blank on the face of the Note, . . . [or possession by the holder to whom the Note was specifically indorsed]"); 1077 Madison St., LLC v. Smith, 2015 U.S. Dist. LEXIA 135025, at *18 (E.D.N.Y. Aud. 27, 2015) ("Nevertheless, it does not follow that physical possession of the note necessarily establishes standing. Physical possession of a note is sufficient *where there is an indorsement in blank on the face of the Note.*"); See generally In re Carrsow-Franklin, 524 B.R. 33 (Bankr. S.D.N.Y. 2015) (explaining that where the plaintiff held physical possession of the original note accompanied by a fraudulent allonge to the note, the plaintiff's possession of the note alone was not enough to establish the plaintiff's standing to enforce the note).

The law in New York is clear — a party cannot be the holder of a negotiable instrument, like the Note, so as to be able to enforce it unless the party is "in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in

possession." NY U.C.C. §1-201(21). "If the instrument is payable to order [also known as the identified person that is the person in possession] it is negotiated by delivery with any necessary indorsement

New York law provides, in relevant part, that the person entitled to enforce an instrument is either "(i) the holder of the instrument, [or] (ii) a nonholder in possession of the instrument who has the rights of a holder." NY U.C.C. § 3-301. "Holder" is defined under New York law as "a person in possession of a negotiable instrument *that is payable either to bearer or to an identified person that is the person in possession*." NY U.C.C. § 1-201(21) (emphasis added). Importantly, New York law makes it clear that if the instrument is payable to order, as Respondent argues is the case here, the instrument can only be enforced by the holder when it is held *with any necessary indorsement*. NY U.C.C. §3-202(1). Thus, Respondent would be entitled to enforce the Note under NY U.C.C. §§ 1-201(21), 3-202(1), and 3-301 if the Note were either indorsed in blank by Accredited or specifically indorsed by the prior owner, *and* actually possessed the Note — not by simply possessing the note. See generally Arnold v. First Citizens Nat'l Bank, 693 Fed. Appx. at 64. Respondent asserts that it can enforce the Note because "[Respondent] has established that it received possession of the Note and continues to have possession of the Note." See Declaration of Richard Share. Unfortunately for Respondent, that assertion is wholly incorrect.

In In re Pinnock, the debtors challenged U.S. Bank's standing to enforce a note, and U.S. Bank relied on solely on its possession of the original note to establish that it had standing to enforce the note. In re Pinnock, 594 B.R. at 613-14. In holding that mere possession of a note is *not* sufficient to establish standing as to be able to enforce it, this Court carefully examined NY U.C.C. §§ 1-201(21), 3-202(1), and 3-301 and explained that "if a note is claimed to be transferred merely by delivery of possession," as is the case here, where Respondent is the holder of a note

that was not originally indorsed to it, "the claimant must show that it came 'from a person entitled to enforce [the note], for the purpose of giving the plaintiff the right to enforce it.'" Id. (citing Bank of N.Y. Mellon v. Deane, 970 N.Y.S.2d 427, 436 (N.Y. Sup. Ct. 2013)). Respondent has made no such showing.

In Claim No. 8-1, Respondent points the Court to two cases, both of which address using "physical delivery" of a note as a basis for standing to enforce the note, to support the assertion that Respondent's mere possession of the Note is sufficient to be able to enforce it in this Chapter 13 bankruptcy case. Respondent points the Court to U.S. Bank, N.A. v. Askew, a 2016 case from the New York Supreme Court, First Department, which in turn references Aurora Loan Servs. v. Taylor, a 2015 case from the Court of Appeals of New York. However, Respondent incorrectly misconstrues the law in both cases, and neither case supports Respondent's assertion that mere possession is sufficient to enforce the Note. Such misrepresentation f caselaw in a federal proceeding should not be without consequences.

In both U.S. Bank and Aurora, the defendants sought to challenge a mortgage foreclosure action that was commenced by the plaintiff, who was in physical possession of a note wherein the defendant agreed to repay a bank for the purchase of a home. See generally Aurora Loan Servs. v. Taylor, 25 N.Y.3d 355 (2015); U.S. Bank, N.A. v. Askew, 138 A.D.3d 402 (1st Dep't 2016). In both cases, the note was subject to a series of indorsements, until the last endorsed party delivered physical possession of the note to the plaintiff without the note ever being indorsed to it, or an allonge ever being affixed. And while the courts in both cases found that the defendant's physical possession of the note was sufficient to enforce the note, the courts' reasoning went well beyond the Respondent's bare assertion that "all that is necessary" is mere assertion of the note. In U.S.

Bank, N.A.[4] and Aurora Loan Servs.,[5] the defendant provided the court with a complete list of endorsements, specifying the legality of every single transfer of the note from its creation until it ultimately reached the party attempting to enforce it, establishing a chain of lawful ownership of the note leading up to its final transfer. See Aurora Loan Servs., 25 N.Y.3d at 355; U.S. Bank, N.A., 138 A.D. at 138. In Aurora, the Court of Appeals of New York reasoned that it was not the simple possession of the note, rather it was this additional evidence demonstrating the chain of ownership that allowed it to be "reasonably inferred . . . that physical delivery of the note was made" so that it could be enforced by the defendant. See Aurora Loan Servs., 25 N.Y.3d at 355.

Clearly, U.S. Bank, N.A. and Aurora Loan Servs. are distinguishable from this Chapter 13 bankruptcy case. Respondent asserts that both of those cases stand for the precedent that in order for it to enforce the note, "all that is necessary is that [Respondent] have possession of the original Note." See Declaration of Richard Share. That is simply not true — unlike the defendants in U.S. Bank, N.A. and Aurora Loan Servs., who were in physical possession of the original note *and* provided the court with a complete list of endorsements evidencing a chain of lawful ownership until the note ultimately reached the party attempting to enforce it, Respondent has done no such thing. The only thing Respondent has provided the court with evidencing a chain of ownership is two purported alloges to the Note: an allonge transferring the Note from Trinity Financial

---

[4]      U.S. Bank came into possession of the note through a series of transfers: first the plaintiff executed the note with Accredited Home Lenders, which was then transferred by indorsement first to The CIT Group, then to Aurora Loan Services, LLC, and finally to SASCO Mortgage Loan Trust 2007-RNP1, for which U.S. Bank was acting as trustee. U.S. Bank then became in physical custody of the original Note as trustee for SASCO Mortgage Loan Trust 2007-RNP1. See Brief of Plaintiff-Appellant, 2015 WL 13769537

[5]      Aurora came into possession of the note through a series of transfers: first the defendant executed the note with the First National Bank of Arizona, which was then transferred by indorsement first to First National Bank of Nevada, then to Residential Funding Company, LLC, and finally to Deutsche Bank Trust Company Americas. When Aurora assumed loan servicer obligations, Deutsche Bank expressly granted Aurora the ability to perform certain acts in its name, including foreclosure, and provided Aurora with physical custody of the original note. See Aurora Loan Servs., 25 N.Y.3d at 355.

Services to Value-Add Mortgage, and an allonge transferring the Note from Value-Add Mortgage to Respondent. Respondent has provided this Court with no explanation as to how or why Trinity Financial Services became the holder of the Note, and thus has not established a chain of lawful ownership as did the defendants in U.S. Bank, N.A. and Aurora Loan Servs.[6]

Because Respondent's mere possession of the Note is not enough to enforce it, and because Respondent has provided no other evidence sufficient to demonstrate to the Court that it was has been physically delivered the Note as to provide it with the right to enforce it, Respondent cannot enforce the Note in this Chapter 13 bankruptcy case unless it can prove that it was transferred the Note by proper allonge indorsing the note or by proper chain of assignment. Respondent cannot. The allonges do not qualify as allonges, they di not indorse the note and the chain of assignments do not even attempt to transfer the Note but rather assign the mortgage only.

**The "Allonge to the Note" purporting to transfer the rights under the Note to Respondent is not a proper allonge, and does not allow Respondent to enforce the Note in this Chapter 13 bankruptcy case.**

Just as Respondent cannot evidence its right as a holder by demonstrating mere possession of the Note, it cannot evidence its right based on the purported "Allonge to the Note,"[7] either. In

---

[6]     In fact, when Value-Add Mortgage filed Claim No. 5-1 on September 10, 2018, it did not provide the Court with a chain of lawful ownership through indorsements or allonges, either. Thus, to this day, it has been unclear to the Debtor how Trinity Financial Services became the holder of the original Note, and if such explanation existed, it would theoretically be affixed to the Note through an allonge, which it is not.

[7]     Notably, it is improper in this case for Respondent to use an allonge in the first place. While New York has recognized the importance of allonges to evidence an indorsement of a note, it is a general rule that "no person can be considered as a party to a bill, unless his name . . . appear[s] on some part of it . . . [and] if there be not room on the bill, others may be added on an annexed paper called *un allonge*." Watson's Executors v. McLaren, 19 Wend. 557, 567-568 (N.Y. Sup. Ct. 1838) (emphasis in original); see also Adams, 853 F.2d at 167 (explaining that numerous jurisdictions permit allonges only where, because of multiple indorsements, no additional space for signatures remains on the negotiable instrument). It is clear that on both the front and the back of the original Note between Debtor and Accredited, there is *more than enough* room for an indorsement to have been made directly to Respondent. Instead, Respondent elected to manufacture an allonge to the Note and attach it to the Note by staple. This runs contrary to the

drafting the New York Uniform Commercial Code, the New York legislature was incredibly clear in setting the standard for when an allonge is proper, and thus evidences rights as a holder by virtue of possession of a note and either an indorsed or an indorsed-in-blank allonge. New York law provides "an indorsement must be written by or on behalf of the holder and on the instrument or on a paper *so firmly affixed thereto as to become a part thereof*." NY U.C.C. § 3-202(2) (emphasis added).[8] Moreover, Official Comment 3 to the code states:

> Subsection (2) follows decisions holding that a purported indorsement on a mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation. The indorsement must be on the instrument itself or on a paper intended for the purpose which is so *firmly affixed to the instrument* as to become an extension or part of it. Such a paper is called an allonge."

NY U.C.C. § 3-202(2) (emphasis added). While the code does not clearly define the term "affixed," the allonges submitted by Respondent certainly are not. The chart below is a side-by-side comparison of the order in which the Note, rider, and purported allonges appear in Claim No. 5-1 filed by Value-Add Mortgage, Claim No. 8-1 filed by Respondent, and the supposed "Original Note" that is held by Respondent. An examination of this chart demonstrates that the "allonges" are not currently affixed to the Note, and, even if they are affixed to the Note, the order of the documents demonstrates that the Note has been taken apart and rearranged, demonstrating that the "allonges" were not affixed to so as to become part of the Note.

---

long standing "No-Space" rule followed in New York, and thus creates a question of fact as to whether Respondent's allonge to the Note was actually affixed to the Note to begin with.

[8]    Official Uniform Comment 3 to that section states, "Subsection (2) follows decisions holding that a purported indorsement on a mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation. The indorsement must be on the instrument itself or on a paper intended for the purpose which is so firmly affixed to the instrument as to become an extension or part of it. Such a paper is called an allonge."

| Claim No. 5-1 | Claim No. 8-1 | Packet with "Note" Inspected by Debtor's Counsel | Share Opposition Papers ECF Dkt No 54 |
|---|---|---|---|
| 1. New York Balloon Note | 1. New York Balloon Note | 1. New York Balloon Note | 1. New York Balloon Note |
| 2. Separate Signed Agreement "Repayment Charge Rider to Note" | 2. Separate Signed Agreement, "Repayment Charge Rider to Note" | 2. Separate Signed Agreement, "Repayment Charge Rider to Note" | 2. Separate Signed Agreement, "Repayment Charge Rider to Note" |
| 3. Allonge to Note indorsed-in-blank | 3. Allonge to Note, transferring the Note from Value-Add Mortgage Fund, LLC to Nancy N. Poser Retirement Trust | 3. Allonge to Note indorsed-in-blank | 3. Allonge to Note, transferring the Note from Value-Add Mortgage Fund, LLC to Nancy N. Poser Retirement Trust |
| 4. Allonge to Note, transferring the Note from Trinity Financial Services, LLC to Value-Add Mortgage Fund, LLC | 4. Allonge to Note, transferring the Note from Trinity Financial Services, LLC to Value-Add Mortgage Fund, LLC | 4. Allonge to Note, transferring the Note from Trinity Financial Services, LLC to Value-Add Mortgage Fund, LLC | |
| | | 5. Allonge to Note, transferring the Note from Value-Add Mortgage Fund, LLC to Nancy N. Poser Retirement Trust | |

First, the New York Uniform Commercial Code makes it explicitly clear that if a party who has the authority to enforce a note wishes to create an allonge to transfer the rights under the note to a third party, the allonge must be firmly affixed *to the note*. NY U.C.C. § 3-202(2). At the absolute minimum, this language unambiguously indicates that an allonge must physically touch the note. See In re Hilton, 544 B.R. 1, 10-11 (Bankr. N.D.N.Y. 2016) (explaining that where an allonge is not touching or connected to the note, the allonge is not considered affixed to the note

so as to become an extension or part of it). The United States Court of Appeals for the Third Circuit

has made it clear that allonges could be valid if they are "stapled or glued *to the notes themselves*."

Adams v. Madison Realty & Development, Inc., 853 F.2d 163, 166 (3d Cir. 1988); see also In re

Speer, 2017 WL 627365 (Bankr. D.Ct. Feb. 15, 2017) (allonges stapled directly to the note). This

is not the case here, where none of the supposed "allonges" physically touch the Note, and are

instead separated from the note by a separate signed agreement, "Repayment Charge Rider to

Note" and assembled in a form of packet. This is not sufficient under NY U.C.C. §3-202(2).

The New York Uniform Commercial Code also makes it clear that for an allonge to be

valid, the allonge must be affixed to the note "*as to become part thereof*." NY U.C.C. § 3-202(2)

(emphasis added).[9] Official Comment 3 explains that simply pinning or clipping an allonge to a

note is not sufficient, unequivocally expressing the New York legislature's concern with both the

prevention of fraud and ensuring an attached chain of title record. See Adams, 853 F.2d at 169

(explaining New Jersey's reasoning for adopting an identical provision of New York's § 3-202(2)).

Here, the two (2) staples attaching the allonges is not sufficient as to make the allonges "become

part thereof" the Note. First, there should be a total of three (3) allonges attached to the Note: the

indorsed-in-blank allonge, the allonge from Trinity Financial Services to Value-Add Mortgage,

and the allonge from Value-Add Mortgage to Respondent. Thus, if the allonges are being affixed

---

[9]     To draw an analogy, the concept of affixing an item "as to become part thereof" is a common issue in disputes involving real property and whether or not an object affixed to the property is a chattel. In determining whether an object is a chattel, courts look to whether removal of the object will either cause "irreparable" or "serious" damage to the real property. If the object's removal will cause irreparable or serious damage, then it is "integrally incorporated with, and has "become part thereof," the property, and is therefore a chattel. See In re Gain Electronics Corp., 117 B.R. 805, 811 (Bankr. D.N.J. 1990). The same line of reasoning should be considered here — the drafters of the New York Uniform Commercial Code were clear in explaining that merely clipping an allonge to a note is not sufficient as to make the allonge become part thereof the note. A staple like the one used by whoever attempted to attach the "allonges" to the Note can be easily removed, as they already have been as indicated by the many holes in the top of the allonges, showing that they cannot possibly be affixed as to become part thereof the Note. There was plenty of room for the originating lender Accredited to place its indorsement on the Note itself and avoid this problem. For reasons not explained, Accredited did not place an indorsement n the note and there is noting to indicate it ever indorsed by way of an actual allonge. It chose not to indorse its note.

to the Note by staple, there should be a minimum of three (3) staples attached to the Note, one for each allonge. That is not the case here — there are only two (2) staples attaching the allonges to Repayment Charge Rider to Note  and not the actual  Note.  Had the first allonge presented in Poof of Claim 5-1 been firmly affixed to become part of the Note, there could not possibly be anything between the Note and first alleged indorsing Allonge.  The documents presented and re-presented to the court shows that the packet of documents have been taken apart, rearranged, and reassembled by either Respondent or some other individual, demonstrating that the allonges could not have possibly been so permanent as to become part of the Note.

In fact, the supposed allonge to the Note submitted by Respondent contains the incorrect loan number. Both the original mortgage and the original Note executed between Debtor and Accredited list the loan number as 0506158628. While a portion of the loan number referenced on the allonge between Value-Add Mortgage and Respondent is covered by a black marking, the last four numbers in that number are 7815 — a discrepancy that raises a question of fact. See U.S. Bank, N.A., 138 A.D.3d at 402 specifically (explaining that where "the allonges do not all bear the same loan number as the original mortgages note[,] this creates a fact issue as to whether the allonges are proper."); see also HSBC Bank USA, N.A. v. Thomas, 999 N.Y.S.2d 671, 675 (N.Y. Sup. Ct. Oct. 10, 2014) (explaining that a question of fact exists when the allonge and the note contain differing loan numbers).


**Respondent cannot establish that it was delivered possession sufficient to allow Respondent to enforce the Note in this Chapter 13 bankruptcy case in the absence of a proper endorsement via allonge.**

Just as Respondent cannot enforce the Note by mere possession of the Note or by the purported "allonge" to the Note, Respondent cannot assert its right to enforce the Note by assignment or transfer, either. Unlike holders that receive their rights through allonge, assignees or transferees must prove that "the transactions through which they acquired their interests vested them with ownership or holder rights." See Aurora Loan Servs., 25 N.Y.3d at 360-62; Bank of New York v. Silverberg, 86 A.D.3d 274 (2d Dep't. 2011). Establishing these transactions generally requires the party seeking to enforce the Note to "prove first that the transaction through which they received their interest in the mortgage note was properly made and, second, that the individual from whom they received their interest in the mortgage note either held or owned it." In re Hilton, 544 B.R. at 11. In order to establish this, the party seeking to enforce the note "must trace the note's chain of custody from their receipt back to the last individual who held the note pursuant to NY U.C.C. §1-201(21)." Id; see also Aurora Loan Servs., 25 N.Y.3d at 360-61 (allowing a party to enforce a note upon providing evidence of a complete chain of legal custody of the note); U.S. Bank, N.A., 138 A.D.3d at 402 (same).

In In re DeConne, the Southern District of New York addressed this exact issue. There, the appellant tried to enforce a note that it was physically in possession of and purportedly obtained through a series of transfers: The Bank of New York to JPMorgan Chase Bank, JPMorgan Chase Bank to Linear Mortgage Group, and Linear Mortgage Group to appellant. In re DeConne, 2015 WL 5460100, *3 (Bankr. S.D.N.Y. Sept. 1, 2015). Even though the appellant was in physical possession of the note, the court explained that a nonholder in possession, just like Respondent, "*must* account for his possession of the unendorsed paper by proving the transaction through which he acquired it. Proof of a transfer to him by a holder is proof that he has acquired the rights of a holder." In re DeConne, 2015 WL 5460100 at *3 (emphasis added); see also NY U.S.C. §3-201

comment 8. And because the appellant was unable to provide the court with evidence of all of the previous transactions, the court held that the appellant could not did not have standing as a nonholder in possession so as to be able to enforce the note in bankruptcy.[10]

Here, Respondent has not provided the Court with any insight as to what a complete chain of custody over the Note would look like. In Claim No. 5-1, Value-Add Mortgage included in its claim a copy of an allonge to the Note supposedly transferring the Note from Trinity Financial Services to Value-Add Mortgage, and in Claim No. 8-1 Respondent included an additional allonge supposedly transferring the Note from Value-Add Mortgage to Respondent. Yet, since Value-Add Mortgage's filing of Claim No. 5-1 and Respondent's filing of Claim No. 8-1, nobody has provided the Court with an explanation as to who gave Trinity Financial Services the Note originally held by Accredited, meaning Respondent cannot assert rights under the Note as an assignee or transferee. Moreover none of the allonges are affixed to the Note itself.

It is important to note that although MERS had the authority under the mortgage as nominee for originating lender, Accredited, to record the mortgage, and it did *not* have any authority to assign the Note.[11] Thus, MERS' authority as nominee[12] was limited to only those powers which were specifically conferred to it and authorized by Accredited as the Lender. See Silverberg, 86 A.D.3d at 281-82 (holding that where MERS is a party to a mortgage similar to that

---

[10]    The appellant in In re DeConne asserted the same argument as Respondent, and "repeatedly emphasize[d] that he is in physical possession of the Debtor's Notes," and thus should be able to enforce them in bankruptcy. In re DeConne, 2015 WL 5460100 at *3. The Southern District of New York made it very clear that such an argument is not sound.

[11]    Specifically, the mortgage executed between Debtor and Accredited lists MERS as a "separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns" and is the mortgagee of record solely for the purposes of recording the mortgage. The document mortgages, grants, and conveys the Property to MERS, and explains that "MERS holds only legal title to the interests granted by me *in this mortgage*." Nowhere I the mortgage is there any indication that assignment of the mortgage will also assign the Note, nor is there any indication that MERS has the authority to assign the Note.

[12]    Nominee is defined as a "person designated to act in place of another, in a very limited way." BLACK'S LAW DICTIONARY 1076 (8th ed. 2004).

of Debtor's, MERS does not have the authority to assign the note, and may only assign the mortgage). So, while it may be the law in New York that a mortgage passes incident to a note, the reverse does not stand — "a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it." Meritt v. Bartholick, 36 N.Y. 44, 45 (1867). Thus, even the purported corporate assignment of the mortgage by MERS that ultimately leaded to the mortgage being transferred to Respondent does not transfer the rights under the Note along with it — there was never a proper transfer of the Note to Trinity Financial Services, and thus there could not have been a proper transfer of the Note to Respondent.

MERS lacking the authority to assign the Note then begs the question: if MERS began the chain of assigning the mortgage until it reached Respondent, and the only "allonges" submitted with Claim No. 5-1 and Claim No. 8-1 show an allonge from Trinity Financial Services to Value-Add Mortgage and an allonge from Value-Add Mortgage to Respondent, then how did Trinity Financial Services ever come to possess the Note in the first place? This question is a tremendous downfall in Respondent's claim, clearly demonstrating that it is wholly unable to provide the Court with a chain of custody with receipt leading to the last individual who held the Note.

**WHEREFORE,** the debtors pray of the Court as follows:

A.      That the Court direct the Chapter 13 Trustee to strike Proofs of Claim 5-1 and 8-1;

B.      That Value-Add Mortgage or any affiliate, successor, servicer, and the like be precluded from filing an amended, modified, or substitute claim in this case;

C.      That the Court disallow and expunge Proofs of Claim 5-1 and 8-1;

D.    That the Court void any and all liens associated with Proofs of Claim 5-1 and 8-1

pursuant to 11 U.S.C. 506(d)(1);

E.    That the Court award legal fees to the Debtor, along with other damages,

sanctions, and injunctive relief under the Court's inherent powers granted under

11 U.S.C. 105; and

F.    That the Debtor has such other and further relief as the Court may deem just and

proper.

DATED: October 5, 2020          By:     /s/Linda M. Tirelli, Esq.
                                        TIRELLI LAW GROUP, LLC
                                        50 Main Street, Suite 1265
                                        White Plains, N.Y. 10606
                                        Phone: 914-732-3222
                                        Email: LTirelli@TW-LawGroup.com